IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK10-43784-TJM |
| ) | A11-4015-TJM |
| DAPHNE C. HAYES, ) | |
| ) | CH. 7 |
|                Debtor(s). ) | |
| NEBRASKA DEPARTMENT OF LABOR, ) | |
| CATHERINE D. LANG, COMMISSIONER ) | |
| OF LABOR, ) | |
| ) | |
|                Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| DAPHNE C. HAYES, ) | |
| ) | |
|                Defendant. ) | |

ORDER

      Trial was held in Lincoln, Nebraska, on August 24, 2011, regarding Fil. #1, Complaint, filed by Catherine D. Lang, Commissioner of the Nebraska Department of Labor. Thomas A. Ukinski appeared for the Nebraska Department of Labor and Commissioner Lang, and John A. Lentz appeared for the debtor/defendant. This order contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

      The debtor filed claims for unemployment benefits for the weeks ending November 4, 2006, through June 2, 2007. Under the Nebraska statutes, a person may be employed but be treated as unemployed within the meaning of Neb. Rev. Stat. § 48-602(27) if the gross wages received for a particular week are less than the amount of the unemployment benefit the applicant could receive based upon prior work history.

      On each weekly claim, the debtor informed the Nebraska Department of Labor ("NDOL") that she earned wages during the weeks claimed, but she failed to inform the NDOL of the total amount of gross wages received. Instead, on each claim, she listed an amount significantly less than her actual gross wages. As a result, in each week she received an amount of unemployment benefits which exceeded the amount she was entitled to. That amount was $6,651.00. As a result of certain offsets the NDOL made from tax refunds and other sources, the remaining balance of the overpayment is $5,371.00.

      The debtor filed a Chapter 7 case and the NDOL has filed this adversary proceeding requesting that the court find the amount owed to it to be non-dischargeable under 11 U.S.C. § 523(a)(2)(A). The debtor testified that she understands she was overpaid, but that the cause of the overpayment was simply a mistake by her when she completed the claims process. She testified that she could not remember exactly how she determined the amount to put on the claim, but she believes she took the net amount she received as shown on her pay statement. Because she claims the overpayment was based upon a mistake, she feels the debt should be discharged.

The NDOL discovered the overpayment when it performed an audit of her account. During an audit, the employer is requested to provide wage information to the department. That wage information is then compared to the amount the claimant listed as gross wages for the weeks. In this case, it became clear to the auditor that the debtor's statement of gross wages was inaccurate every week.

When a claimant first files for unemployment benefits, the standard practice of the department is to send to the debtor a handbook explaining the process. That handbook informs the claimant to use the gross wages when making the claim. In addition, the claim form, whether filed in paper form as was done several years ago or filed over the Internet as is now the practice, states quite plainly that gross wages are to be used.

On or about August 22, 2007, the department provided notice to the debtor of the potential determination that there had been an overpayment. That notice (Fil. #17) stated, "Specifically at issue is your income from the following employers, and whether you knowingly made a false statement or failed to disclose a material fact to obtain benefits to which you were not entitled." It invited the debtor to discuss the potential overpayment and whether she failed to disclose a material fact. It further provided that failure to contact the department before the deadline would result in a decision being made based on available information. She did not contact the department about the overpayment.

In September of 2007, the department served the debtor with a "Notice of Adjudicator's Determination" (Fil. #13), which shows the debtor the amount of wages reported by her and the actual gross wages earned by her. It also shows a week-by-week breakout of the amount of unemployment benefits she should have received as opposed to the amount she actually received and shows the total amount of unemployment benefits she received to which she was not entitled. That document informs a claimant such as the debtor of the opportunity to appeal the determination. The document also informs the claimant that the department has determined that the overpayment was due to willful misrepresentation of a material fact (Fil. #13). Although the debtor testified that she tried to appeal, there is no record of any correspondence from her to the department regarding the appeal and she did not follow up with additional correspondence or telephone calls.

The determination of overpayment of unemployment compensation has become final under Neb. Rev. Stat. § 48-634.

The notice of adjudicator's determination (Fil. #13) shows that the debtor reported gross wages of $108.68 for 17 of the 31 weeks for which she received benefits, while her actual gross wages varied from $269.70 to $424.70 during those weeks. If she mistakenly listed her net pay on the weekly claim, the amount of the net pay should have varied based upon the amount of the gross wages actually earned. There is no such variance. The notice also shows seven other weeks where the debtor reported $117.04 in wages when her actual gross wages varied from $272.38 to $351.23 and three weeks where the actual gross wages were $275.07 but the amount reported varied from $114.04 to $125.40.

Several years prior to 2006, the debtor also applied for and obtained unemployment benefits. At that time it was also determined that she had been overpaid because she had not reported her actual gross income. She was informed of the reason for the overpayment and, perhaps because it was her first offense, the department did not determine that she had made a

false material representation and it allowed her to repay the overage (Fil. #32). However, I infer from her prior overpayment experience that she was aware of the requirement to list gross wages on the claims which are the subject of this case.

Based on all of the above, I find it a fact that the debtor's submission of claims for unemployment benefits with an incorrect amount of gross wages, was not an unintentional mistake and was not a listing of net wages rather than gross wages.

The Bankruptcy Code at 11 U.S.C. § 523(a)(2)(A) provides that the debtor shall not receive a discharge of any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's financial condition.

Case law informs that to obtain a judgment of non-dischargeability under that section, the creditor must prove, by a preponderance of the evidence, that:

> (1) the debtor made a false representation; (2) at the time the representation was made, the debtor knew it was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained loss and damages as a proximate result of the misrepresentation.

*Islamov v. Ungar (In re Ungar)*, 429 B.R. 668, 673 (B.A.P. 8th Cir. 2010) (citing *Field v. Mans*, 516 U.S. 59, 74 (1995); *Grogan v. Grarner*, 498 U.S. 279, 291 (1991); *Merchs. Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cr. 1999)). *See also Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340 (8th Cir. 1987).

The bankruptcy court has exclusive jurisdiction to determine whether debts for a debtor's fiduciary or non-fiduciary fraud, embezzlement, larceny, or willful and malicious injury are non-dischargeable. 11 U.S.C. § 523(c); *Zio Johnos, Inc. v. Ziadeh (In re Ziadeh)*, 276 B.R. 614, 619 (Bankr. N.D. Iowa 2002). Therefore, the court must review the underlying document upon which the creditor relies to see whether it establishes the elements of a prima facie case under § 523. *Hobson Mould Works, Inc. v. Madsen (In re Madsen)*, 195 F.3d 988, 989-90 (8th Cir. 1999).

The first issue here is whether the NDOL established the § 523(a)(2)(A) elements in the notice of adjudicator's determination and, if so, whether that determination is entitled to preclusive effect in this court. "[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' . . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)).

> It is generally recognized that decisions and determinations made by Workers Compensation Bureaus and similar state administrative agencies are entitled to preclusive effect just as any court decision providing the administrative proceeding from which the determination emanated meets the following criteria:
>
> 1. The issue sought to be precluded must be the same as that involved in the prior litigation;

      2. The issue must have been litigated in the prior action;
      3. The determination of the issue must have been a critical and necessary part of the decision in the earlier action, and
      4. The standard of proof in the prior litigation must have been at least as stringent as the standard of proof in the later litigation.

*North Dakota Workers Compensation Bureau v. Tuttle (In re Tuttle)*, 230 B.R. 155, 157 (Bankr. D.N.D. 1999) (citing *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir. 1991)).

The party asserting preclusion bears the burden of proving each of the elements. *Miera*, 926 F.2d at 743. When making the determination that an issue was actually litigated and was necessary to the decision in the prior proceeding, the court should examine the entire record of the earlier case. *Id.*

The September 6, 2007, notice of adjudicator's determination (Fil. #13) was a decision of the claims adjudicator that the debtor made a "willful misrepresentation" concerning her wages. That notice became a final judgment because no appeal was filed within 20 days of the mailing of the notice. Neb. Rev. Stat. § 48-634 (Fil. #28). "[A]ny right, fact, or matter in issue, directly passed upon or necessarily involved in a determination . . . which has become final . . . shall be conclusive for all the purposes of the Employment Security Law." Neb. Rev. Stat. § 48-636 (Fil. #29). The NDOL, by virtue of the notice, "directly passed upon" the issue of whether the misrepresentation was willful. Therefore, since that determination was not appealed, the finding of willful misrepresentation is conclusive between NDOL and the debtor as to her claim for unemployment benefits.

Since the notice, which stated that the debtor made "willful misrepresentations" concerning her wages earned while receiving unemployment benefits, has become final, it is *res judicata* between the debtor and NDOL in this adversary proceeding.

It is clear that the plaintiff was harmed by the willful misrepresentation to the extent of the remaining overpayment of benefits.

The final issue with regard to whether the debt is to be excepted from discharge is whether the NDOL justifiably relied on the representation. Justifiable reliance is a lower standard than reasonable reliance. *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell)*, 423 B.R. 309, 314 (B.A.P. 8th Cir. 2010) (citing *Field v. Mans*, 516 U.S. 59 (1995)). Reliance may be justifiable even when an investigation would have revealed the falsity of the representation. *Ungar*, 429 B.R. at 673 (citing *R & R Ready Mix v. Freier (In re Freier)*, 604 F.3d 583, 587-88 (8th Cir. 2010)). The distinction between justifiable and reasonable reliance means the creditor's conduct need not conform to the standard of a reasonable person. "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field*, 516 U.S. at 70-71 (quoting *Restatement (Second) of Torts* § 545A cmt. b (1976)). However, the creditor cannot expect a court to rescue him "if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* must use his senses and cannot recover "[A] creditor 'cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Field* at 71 (quoting *Restatement (Second) of Torts* § 541 cmt. a)).

  Here, the debtor intentionally submitted incorrect wage figures to NDOL. The department had no reason to know she was misrepresenting her income until it conducted a wage audit and discovered the discrepancies. The department's handbook for claimants warns against committing acts of fraud in connection with filing unemployment claims, so the debtor was on notice that NDOL expected accurate applications but would be conducting periodic and random audits to ensure the accuracy of benefit payments. The department was justified in relying on the claims as filed by the debtor.

  Because NDOL has established each element of § 523(a)(2)(A), this debt is excepted from discharge.

  IT IS ORDERED: The unemployment benefits overpayment debt owed to the Nebraska Department of Labor is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Separate judgment will be entered.

  DATED:  September 16, 2011

                BY THE COURT:

                <u>/s/ Timothy J. Mahoney</u>
                United States Bankruptcy Judge

Notice given by the Court to:
  *Thomas Ukinski
  John A. Lentz
  U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.